## 72329. MOORE v. THE STATE.
(345 SE2d 631)

DEEN, Presiding Judge.

Curtis Moore was indicted for the offenses of burglary, aggravated assault, rape, and habitual offender. He received a jury trial and was convicted on the first three counts. He brings this appeal following the denial of his motion for a new trial.

1. In his first enumeration of error, Moore contends that the trial court erred in failing to give a complete recharge on the offense of burglary.

After deliberating for a period of time, the jury returned to the courtroom and requested the court to redefine the charge on burglary. The court read the relevant provisions of OCGA § 16-7-1 (a). After further deliberations, the jury returned again to the courtroom to request further instruction on the same point of law. The jury foreman stated that it was having difficulty with the charge because of the way the indictment was written. In response the court charged: "For a person to be guilty of burglary, it is not necessary that he actually complete a theft or felony, but it is sufficient if he enters with intent to commit a theft or a felony." The court overruled appellant's motion for a mistrial which was based upon the court's failure to reread the complete charge on burglary to the jury.

It is within the trial court's discretion to recharge the jury fully or only on the point or points requested. *Dyson v. State*, 155 Ga. App. 297, 299 (270 SE2d 711) (1980); *Williams v. State*, 151 Ga. App. 765, 766 (261 SE2d 487) (1979). A jury instruction on only a specific point is not error unless the "instruction taken alone might leave an erroneous impression in the minds of the jury." *Dyer v. State*, 167 Ga. App. 310, 311 (306 SE2d 313) (1983). No erroneous impression could have been left in the jurors' minds as a result of the recharge. As to appellant's contention that a recharge on reasonable doubt was required to balance the recharge on burglary, we find it is within the discretion of the trial judge as to whether additional instructions are required. *Taylor v. State*, 169 Ga. App. 842 (315 SE2d 661) (1984).

2. Moore also asserts as error the trial court's refusal to grant his motion for a new trial. In his amended motion for a new trial, Moore complained that he was denied his right to a fair trial because two or more jurors visited the crime scene and related information about their observations to the rest of the jurors during their deliberations and that this information contributed to his conviction.

Appellant testified at trial that the victim called him from a motel room door as he crossed the motel parking lot. Apparently some of the jurors were familiar with the area and motel in question and recalled that a fence obstructed the parking lot's access. At the hearing on the motion, one woman juror testified that there seemed to

be some discrepancy as to how the accused got in the motel and back out from the direction that he said he was coming. She stated that the information related back to the jurors who visited the crime scene was a part of the discussion and she did not know if it was really a factor as to the ultimate decision. While she felt that it had some influence on her decision, it was not the only factor that made her change her mind as it "was just a part of the discussion and I don't know that it was a contributing factor as to the ultimate decision." She could not identify the jurors who discussed the motel fence.

Another juror testified that she was familiar with the area because she drove past the motel every day. When asked about other jurors' knowledge of the area, she said she thought there were one or two others who were familiar with the way the fence was laid out and that they participated in the discussion. A male juror testified that he had prior personal knowledge of the motel, but he knew it by its former name and that he rode by the site after the first day of trial to confirm that the motel in question was the one with which he was familiar. He further testified that nothing he saw or heard from other jurors as a result of their observations had any effect on his vote. A third juror who viewed the motel site stated that it was located on his way home and he merely looked at it as he drove past. He informed the court that the juror discussion served only "to support things we had already talked about." He did not mention either noticing or discussing the fence. The remaining jurors did not recall a discussion of the other jurors' observations of the motel property. The discussion in question apparently took place before the jurors voted as to the defendant's guilt or innocence.

Under certain circumstances, the rule that jurors cannot impeach their own verdict is inapplicable. One recognized exception is juror misconduct where the jurors, in effect, become unsworn witnesses against the defendant in violation of the Sixth Amendment. *Watkins v. State*, 237 Ga. 678 (229 SE2d 465) (1976).

In *Chadwick v. State*, 164 Ga. App. 102, 103 (296 SE2d 398) (1982), one juror visited the crime scene the night before the verdict was reached and reported his observations to the other jurors in the morning before the verdict was reached. Another juror reported on the results of an experiment he conducted on the defense's claim that a revolver slipped off an automobile seat. In that case, at 103, this court held that *Watkins* did not fashion a broad rule which would permit jurors to impeach their verdict; the rule was only made applicable "by 'the intentional gathering of extrajudicial evidence, highly prejudicial to the accused, by members of the jury and the communication of that information to the other jurors in the closed jury room.'" In *Chadwick*, this court affirmed the court below, finding that none of the jurors could remember which jurors had gathered

and reported the information or what the jurors actually said, and that each juror testified that the verdict was based upon the evidence adduced at trial.

We find that *Chadwick* is on point with the instant case. Here the alleged juror misconduct was not so prejudicial to the defendant as to constitute reversible error and "[t]he testimony of the jurors at the hearing [on the motion] convinces us that there is no 'reasonable possibility that the improperly admitted evidence contributed to the conviction [and] reversal is not required.' *Schneble v. Florida*, 405 U. S. 427, 432 (92 SC 1056, 31 LE2d 340)." *Chadwick v. State*, supra at 103. See also *Boles v. State*, 168 Ga. App. 904 (310 SE2d 741) (1983). The facts in *Bobo v. State*, 254 Ga. 146 (327 SE2d 208) (1985), are clearly distinguishable from the case *sub judice* in that the extra-record information involved facts critical to a determination of the eyewitness identification of the defendant. In *Bobo*, prior to the juror's revelation of the results of her investigation, the vote was eight to four in favor of acquittal; afterward, it was seven to five for conviction. There is nothing in the instant case to indicate that any of the jurors changed their minds because of the extra-record information. The sole juror who felt she was in any way influenced by the information stated it was only one of several factors contributing to her decision.

*Judgment affirmed. Benham, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur completely in Division 1 but find it necessary to qualify my agreement with Division 2.

There is no doubt that the jurors' investigation during trial, limited though it was, should not have been done. *Watkins v. State*, 237 Ga. 678, 683-685 (229 SE2d 465) (1976). It confirmed certain facts testified to by the state's witnesses and cast greater doubt on defendant's asserted facts in explanation of his presence at the scene. Thus I would not refer to the cursory investigations only as "alleged" juror misconduct, as does the majority. The rule that jurors base their verdict only on evidence presented in the trial of the case should be scrupulously adhered to.

But here it is harmless error because the scene, the fence, the layout of the motel property and its accesses, was thoroughly familiar to at least one juror prior to trial anyway. Thus, a juror's personal knowledge of the facts in question, which were related but not central to the defense, was available to the jury even without the others' drive-bys during trial.

Moreover, the juror who testified at the motion for new trial that it contributed to her decision was referring to the personal knowledge

some jurors had of the scene before the trial as well as to the information gleaned during trial from the drive-bys. This makes the effect of the additional information attenuated at best. Here there is little, if any, probability that prejudice to appellant resulted. Thus I agree that he was not denied a fair trial by what transpired.

DECIDED MAY 2, 1986 —
REHEARING DENIED MAY 16, 1986 —

*Henry E. Williams*, for appellant.
*Hobart M. Hind, District Attorney*, for appellee.